1
2
3
4
5
6
7

8           **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11  MONICA TABAREZ GUZMAN,          ) Case No.: 1:20-cv-0514 JLT
                                    )
12            Plaintiff,            ) ORDER GRANTING PLAINTIFF'S REQUEST
                                    ) FOR JUDICIAL REVIEW (DOC. 20) AND
13      v.                          ) REMANDING THE ACTION PURSUANT TO
                                    ) SENTENCE FOUR OF 42 U.S.C. § 405(g)
14  KILOLO KIJAKAZI,[1]             )
    Acting Commissioner of Social Security,  ) ORDER DIRECTING ENTRY OF JUDGMENT IN
15                                  ) FAVOR OF MONICA TABAREZ GUZMAN, AND
                                    ) AGAINST DEFENDANT KILOLO KIJAKAZI,
16            Defendant.            ) ACTING COMMISSIONER OF SOCIAL
                                    ) SECURITY
17  _____)

18          Monica Tabarez Guzman asserts she is entitled to disability benefits, a period of disability, and

19  supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

20  administrative law judge and Appeals Council erred in evaluating the record.  (*See generally* Doc. 20.)

21  For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to

22  sentence four of 42 U.S.C. § 405(g).

23                              **BACKGROUND**

24          In February 2017, Plaintiff applied for benefits, alleging she came disabled in March 2015 due

25  to depression, a mass on her right kidney, left kidney removal due to cancer, arthritis, right shoulder

26

27          [1] This action was originally filed against Andrew Saul in his capacity as the Commissioner of Social Security.
    The Court has substituted Kilolo Kijakazi, who has since been appointed the Acting Commissioner of Social Security, as
28  the defendant. *See* Fed. R. Civ. P. 25(d).

                                        1

pain with inflammation, and right knee inflammation.  (Doc. 12-1 at 133-134.)  The Social Security Administration denied the applications at the initial level and upon reconsideration.  (*See generally id.* at 126-186.)  Plaintiff requested a hearing and testified before an ALJ on March 5, 2019.  (*Id.* at 74, 92.)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on March 29, 2019.  (*Id.* at 74-83.)  Plaintiff requested review by the Appeals Council, which denied the request on February 7, 2020.  (*Id.* at 6-9.)  Thus, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

1   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

3   the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

4   gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

5   **ADMINISTRATIVE DETERMINATION**

6        To achieve uniform decisions, the Commissioner established a sequential five-step process for

7   evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process

8   requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had

9   medically determinable severe impairments (3) that met or equaled one of the listed impairments set

10  forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional

11  capacity to perform to past relevant work or (5) the ability to perform other work existing in significant

12  numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical

13  evidence. 20 C.F.R. §§ 404.1527, 416.927.

14       Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

15  gainful activity after the alleged onset date of March 31, 2015.  (Doc. 12-1 at 76.)  Second, the ALJ

16  found Plaintiff had "disorder of [the] urinary tract, unspecified arthropathies, rotator cuff injury and

17  rotator cuff tear, right knee arthritis, obesity chronic kidney disease stage two—status post left

18  nephrectomy in 2011, renal neoplasm, carpel tunnel syndrome of the right upper extremity (CTS of

19  RUE) and gastritis." (*Id.* at 77-78.)  At step three, the ALJ determined Plaintiff's impairments did not

20  meet or medically equal a Listing.  (*Id.* at 24-25.)  Next, the ALJ found:

21   [T]he claimant has the residual functional capacity to perform light work as defined
     in 20 CFR 404.1567(b) and 416.967(b) except no operation of foot controls with the
22   right lower extremity and the claimant can occasionally push and pull with the right
     upper extremity.  The claimant can occasionally stoop, balance, knee, crawl, climb
23   ramps or stairs—yet never crouch, or climb ladders, ropes or scaffolds.  The claimant
     is excluded from reaching overhead with the right upper extremity and is limited to
24   simple routine tasks and simple decision making.

25  (*Id.* at 78, emphasis omitted.)  With this residual functional capacity, the ALJ determined at step four

26  that Plaintiff was "unable to perform any past relevant work."  (*Id.* at 81.)  However, ALJ found "there

27  are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.*

28  at 82-83.)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security

Act from March 31, 2015, through the date of the decision.  (*Id.*)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ in finding her depression was not a severe impairment at step two, and new evidence submitted to the Appeals Council concerning her mental impairments would change the outcome of the decision.  (Doc. 20 at 23-30.)  In addition, Plaintiff contends the ALJ erred in evaluating her subjective complaints and the medical record, which resulted in the residual functional capacity lacking the support of substantial evidence.  (*Id.* at 30-39.)  Finally, Plaintiff asserts the ALJ did not resolve a conflict between the *Dictionary of Occupational Titles* and testimony from the vocational expert.  (*Id.*)  On the other hand, the Commissioner argues the Court should affirm the "decision because the ALJ's findings are supported by substantial evidence and free from reversible legal error." (Doc. 22 at 14.)

## A.      **New Evidence before the Appeals Council**

As an initial matter, in arguing that the ALJ erred at step two, Plaintiff asserts "new and material evidence submitted to the Appeals Council … would change the outcome of the decision."  (Doc. 20 at 28, emphasis omitted.)  According to Plaintiff, the Appeals Council "improperly failed to consider the 'New and Material Evidence' because it was dated after the ALJ decision."  (*Id.* at 28.)  However, Plaintiff does not specifically address the findings of the Appeals Council related to the additional evidence, the Appeals Council did not exhibit.  (*See id.* at 28-29; *see also* Doc. 12-2 at 6-9, 11.)

The Regulations govern when Appeals Council is obligated to review additional evidence submitted after the ALJ issues a decision.  *See* 20 C.F.R. §§ 404.970, 416.1570 (effective January 17, 2017).  The Regulations indicate the Appeals Council "will review a case if ... the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  Evidence is new if it is not duplicative or cumulative. *Meyer v. Astrue*, 662 F.3d 700, 704-05 (4th Cir. 2011).  In addition, evidence can be deemed new if it was not available when the ALJ made issued the decision. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).

*///*

4

1          1.          Consideration of evidence

The Ninth Circuit distinguished between evidence the Appeals Council "considered" and evidence the Appeals Council merely "looked at" to determine whether the additional evidence was incorporated into the record.  The Court explained that evidence the Appeals Council *considered* becomes part of the administrative record as "evidence upon which the findings and decision complained of are based." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). In contrast, where "the Appeals Council only *looked* at the evidence... the new evidence did not become part of the record." *Amor v. Berryhill*, 743 Fed. App'x 145, 146 (9th Cir. 2018) (emphasis added); *see also De Orozco v. Comm'r of Soc. Sec.*, 2019 WL 2641490 at *11 (E.D. Cal. June 26, 2019) (observing the Ninth Circuit distinguished between instances where the Appeals Council formally considered evidence and made it part of the administrative record with instances where the Appeals Council only looked at the evidence).  Importantly, where the Appeals Council only looks at the evidence and it does not become part of the administrative record, the Court "may not consider it." *Amor*, 743 Fed. App'x at 146; *see also Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003).

The Appeals Council noted Plaintiff submitted additional medical evidence, which the Appeals Council reviewed and stated:

> You submitted additional evidence from Madera Community Behavioral Health Services, dated October 11, 2018 (15 pages). This evidence is not new because it is a copy of Exhibit 21F, pages 1-13 and 17-18. We did not exhibit this evidence.
>
> You also submitted additional evidence from Madera County Behavioral Health Services, dated May 9, 2019 to June 17, 2019 (20 pages); October 23, 2019 to November 20, 2019 (9 pages); and May 9, 2019 to December 11, 2019 (24 pages). The Administrative Law Judge decided your case through March 29, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 29, 2019.

(Doc. 12-1 at 7.)  Because the Appeals Council did not *consider* the evidence but merely looked at it, the documents submitted were not incorporated into the administrative record subject to the Court's review, unless Plaintiff carries the burden to demonstrate the evidence should have been considered. *See Amor*, 743 Fed. App'x at 146; *Lowry*, 329 F.3d at 1024.

2.          Plaintiff's burden with new evidence

When the Appeals Council fails to "consider" additional evidence that satisfies the requirements

5

of Section 404.970(b) or 416.1570(b), a remand for further administrative proceedings is appropriate. *Taylor v. Comm'r of Soc. Sec. Admin*., 659 F.3d 1228, 1233 (9th Cir. 2011). A claimant has the burden to show the evidence should have been considered by the Appeals Council under the Regulations. *See Hawks v. Berryhill*, 2018 WL 6728037 at *4 (M.D.N.C. Dec. 21, 2018) (noting under the amended Regulations, "a claimant's burden to have new evidence considered for the first time at the Appeals Council level" includes "a requirement to show a reasonable probability of a different outcome").

Plaintiff contends the evidence submitted shows she had "ongoing 'severe' and 'disabling' Major Depressive Disorder, [and] related back to the period at issue, as the reflect [Plaintiff's] eventual need for specialty psychological medication management from a psychiatrist for [auditory hallucinations] and [visual hallucinations] and the need for prescription medication for anti-psychotic medications." (Doc. 20 at 29, emphasis omitted.) Plaintiff asserts the evidence supports an opinion from Dr. Bartell, indicating Plaintiff had "multiple 'marked' psychological limitations." (*Id.*)

As Plaintiff admits, the new evidence cited by Plaintiff post-dates the ALJ's decision by several months, because the ALJ issued the decision on March 29, 2019, and the first treatment records submitted to the Appeals Council were dated May 9, 2019. (Doc. 12-1 at 62.) In May 2019, Plaintiff sought "to establish psychiatric care" with Dr. Caaithiry Jayaraman and Madera County Department of Mental Health upon the referral of her primary care physician, and "report[ed] a long history of depression on and off since childhood" that worsened "over the past two months." (*Id.* at 63.) Dr. Jayaraman noted Plaintiff had "a prior diagnoses of Major Depressive Disorder with psychotic features." (*Id.*) During the initial evaluation, Dr. Jayaraman found Plaintiff appeared alert with good eye contact; exhibited unremarkable behavior with normal speech, clarity, and tone; had a thought process that was logical, linear, and goal-directed; and normal thought content. (*Id.* at 59-60.) In addition, the doctor opined Plaintiff had a normal ability to concentrate; "very good" immediate, recent, and remote memory; and good insight and judgment. (*Id.* at 61.) The submitted medical records indicate Plaintiff received treatment from the County Mental Health through 2019, including "supportive counseling and pharmacological management." (*See, e.g., id.* at 31, 36, 40, 49.)

Significantly, the new evidence cited by Plaintiff does not address the effect of depression on her mental ability to do most jobs, or include mental functional limitations identified by a physician.

The new evidence before the Appeals Council does not provide new treatment information during the adjudicated period.  Rather, the evidence before the Appeals Council clearly indicates Plaintiff reported a *worsening* condition after the ALJ issued the decision.  (Doc. 12-1 at 63.)   Consequently, the Appeals Council did not err in concluding Plaintiff failed to demonstrate "a reasonable probability that it would change the outcome of the decision." *See Nottoli v. Astrue*, 2011 WL 675290, at *3 (E.D. Cal. Feb. 16, 2011) ("recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities").  Consequently, she fails to demonstrate error by the Appeals Council in failing to incorporate the new evidence as exhibits into the administrative record.  *See* 20 C.F.R. §§ 404.970, 416.1570.

## B.    Plaintiff's Subjective Statements

Plaintiff testified she had arthritis in her right knee that prevented her "from walking and working."  (Doc. 12-1 at 94.)  She also reported she previously had cancer, had surgery on her right shoulder after suffering an injury, and suffered from a urinary tract infection.  (*Id.* at 94, 106.)  Further, Plaintiff said she suffered from depression.  (*Id.* at 100-101.)

She reported that she stayed in her room "[m]ostly all day" due to depression.  (Doc. 12-1 at 100.)  Plaintiff said she would "look out the window," and she did not watch TV or movies.  (*Id.*)  She stated she did not go out and socialize and never wanted to do so.  (*Id.* at 101.)  Plaintiff testified she did not have friends visit and she did not "get along with anybody," including her children.  (*Id.*)  Plaintiff said she did not like noise and being around other people bothered her to the point that her grandchildren had to go outside when they visited.  (*Id.* at 101-02.)  Plaintiff said she "can't stand [the] noise" made by the kids.  (*Id.*)

Plaintiff confirmed that she told her doctor she felt a shadow following her and identified it as her deceased brother Bobby.  (Doc. 12-1 at 102.)  She said he was always with her, and she could "see a big shadow [on the] back of [her] seat."  (*Id.*)  Plaintiff believed that Bobby protected her from harm. (*Id.*)

She reported that she was receiving mental health treatment, including medication prescribed by her primary care physician, Dr. Michael Norman.  (Doc. 12-1 at 111.)  Plaintiff said the medication made her daydream, and she was not able to concentrate or focus.  (*Id.*)  She stated she cried a lot due

to depression.  (*Id.*)  Plaintiff said she saw a counselor with Madera County Mental Behavioral Health, and planned to see a doctor, but had not done so as of the time of the hearing.  (*Id.* at 112-13.)

Plaintiff testified that her daughter, who was 20 years old, helped with daily tasks, such as reminding Plaintiff of "doctor bills, medication and stuff like that."  (Doc. 12-1 at 99.)  She said her daughter also helped with chores such as cooking, sweeping, vacuuming.  (*Id.*)  Plaintiff explained she would vacuum only her own room, which took about three minutes, and her daughter did the rest.  (*Id.* at 99-100.)

Plaintiff believed her right shoulder had worsened after a surgery, to the point that she had to use her left hand when using the restroom.  (Doc. 12-1 at 103.)  She said she could not lift her right arm—which was her dominant arm—over her head.  (*Id.*)  Plaintiff explained she required help from her daughter to put on a shirt on the right side and showering.  (*Id.* at 114.)

She stated she also suffered numbness in her right hand and could use it for "about five minutes" before the numbness started.  (Doc. 12-1 at 103-04.)  Plaintiff said she would open and close her hand to make the numbness go away, and it took "about two minutes to go away" once she started moving her hand.  (*Id.* at 104.)  She reported that she started dropping things from her right hand about five months before the hearing.  (*Id.* at 105.)  According to Plaintiff, she could not use a knife to cut food with her right hand and could no longer hold a pen to write for more than a short period of time, though she could sign her name.  (*Id.* at 116-18.)  She anticipated having a nerve test due to the numbness.  (*Id.* at 105-06.)

She reported that with the urinary tract infection, which she had since 2017, Plaintiff had to use the restroom more frequently.  (Doc. 12-1 at 106.)  She said she had one kidney removed and a cyst in her other kidney.  (*Id.* at 106-07.)  Plaintiff testified she was told "to drink nothing but water," and to drink extra water every day.  (*Id.* at 107.)  As a result, Plaintiff said if she had a job, then she would require quick access to a restroom.  (*Id.*)

Plaintiff said she had pain "all the time" in her stomach due to gastritis.  (Doc. 12-1 at 107-08.)  She explained that she also had pain following a C-section and procedures to remove her uterus and an ovary.  (*Id.* at 107.)  Plaintiff reported she went to a cancer doctor, who found "a lot of scar tissue," which caused pain on her right side.  (*Id.*)

She reported her right leg felt numb and "like it wants to give out." (Doc. 12-1 at 108.) She said she used a knee brace to help support her knee and a cane, which was prescribed by a doctor about five months before the hearing. (*Id.* at 108-09.) Plaintiff said she used her own cane "for about a year" prior to receiving the one prescribed by Dr. Norman. (*Id.* at 109.) She reported that she used the cane for both standing and walking. (*Id.* at 108-09.)

Plaintiff estimated she could stand and walk about thirty minutes at one time before she got tired, and her leg was numb. (Doc. 12-1 at 110.) She said after standing, she would "sit on a flat chair" for about thirty minutes before she needed to stand again due to pain in her back and knees. (*Id.*)

### 1. Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004).

An ALJ may consider many factors to assess a claimant's statements including, for example: (1)

the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

2.      The ALJ's Analysis

The ALJ summarized Plaintiff's subjective complaints by stating: "The claimant alleges that she is unable to perform work-related activities on a sustained basis due to a combination of physical and mental impairments." (Doc. 12-1 at 79.) The ALJ determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id*.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id*.) The ALJ stated:

In evaluating the claimant's symptoms, including pain, under the factors described in 20 CFR 404.1529(c)(3), 416.939(c)3) and Social Security Ruling 16-3p, there are several reasons why the claimant's allegations of the nature, intensity, persistence, limiting effects of those symptoms are not consistent with the medical signs, laboratory findings and/or other evidence of record which limit the capacity for work-related activities.

First, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations—as the record is devoid of any indication that the claimant's daily activities, are significantly impaired.

Second, although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. When considering the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, it would not prevent the claimant from engaging in the above residual functional capacity. Third, the record does not contain any non-conclusory opinions, supported by clinical or laboratory evidence, from treating or examining physicians indicating that the claimant is currently disabled.

Fourth, the claimant's symptoms and related limitations are not consistent with the evidence of record. For example, the claimant's urinary incontinence is described as

10

mild with only occasional urgency—yet "feeling well" (Exhibits 6F; 24F; 27F).
Moreover, the claimant bikes or walks, two miles per day, seven days per week—per
the Camarena Health Center records (Exhibit 4F/10, 78)[.]

(Doc. 12-1 at 81.)

Plaintiff argues the ALJ erred in evaluating her testimony in this manner and failed "to provide the requisite 'clear and convincing' reasons for rejecting [her] symptomology evidence." (Doc. 20 at 34, emphasis omitted.) Plaintiff asserts that "the ALJ harmfully erred by failing to address the specific symptomology evidence presented at hearing and to detail what specific evidence supported the ALJ's discounting of this disabling symptomology testimony." (*Id.* at 36, emphasis omitted.) The Commissioner argues that "[t]he ALJ reasonably considered Plaintiff's subjective symptom testimony," by considering her daily activities, the treatment received, and the medical record. (Doc. 22 at 10.)

### a. Use of "boilerplate" language

Plaintiff objects that the "the ALJ's proffered language incorporated in the decision to discount Ms. Guzman's symptomology, that the 'intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision' — does not rise to the stringent "clear and convincing" standard." (Doc. 20 at 36.) Plaintiff observes that "this exact language has been criticized by courts, including the Ninth Circuit, as 'boilerplate language.'" (*Id.*, citing *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)).

As Plaintiff argues, the Ninth Circuit criticized findings that indicate a claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." *Laborin*, 867 F.3d at 1154. The Ninth Circuit found "this boilerplate language is problematic," and "subverts the way an RFC must be determined relying on credible evidence, including testimony." *Id*. As a result, the Ninth Circuit determined "inclusion of [the] flawed boilerplate language" "does not ...add anything to the ALJ's determination." *Id*. Thus, where an ALJ includes only boilerplate language, the analysis is insufficient to support the ALJ's conclusions. *Id.* at 1155. However, here, the ALJ purported to consider other factors in evaluating Plaintiff's subjective statements and did not attempt to rely solely upon the boilerplate language.

///

11

1                   *b.*     *Daily activities*

2          A claimant's level of activity may be sufficient to support an ALJ's determination to give less

3 weight to her subjective statements. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685,

4 693 (9th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). For example,

5 the Ninth Circuit determined the ability to cook, clean, do laundry and manage finances may be

6 sufficient to support an adverse finding of credibility. *See Stubbs-Danielson*, 539 F.3d at 1175. An

7 ALJ may also conclude "the severity of . . . limitations were exaggerated" when a claimant exercises,

8 gardens, and participates in community activities. *Valentine*, 574 F.3d at 693. The Ninth Circuit

9 explained, "Even where ... activities suggest some difficulty functioning, they may be grounds for

10 discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating

11 impairment." *Stubbs-Danielson v. Astrue*, 539 F.3d at 1175; *see also Burch*, 400 F.3d at 681.

12          The ALJ asserted that Plaintiff "bikes or walks, two miles per day, seven days per week—per

13 the Camarena Health Center records," and implies this level of activity was described "[p]ost-surgery."

14 (Doc. 12-1 at 79, citing Exh. 4F/10, 78 [Doc. 12-1 at 578, 646].) However, the treatment records cited

15 by the ALJ indicated that Plaintiff exercised by biking and walking are dated January 12, 2016, and

16 March 2, 2017. Thus, the records pre-date Plaintiff's complete right rotator cuff tear in October 2017,

17 the arthroscopic surgery performed in November 2017, and the subsequent diagnosis of rotator cuff

18 impingement syndrome in May 2017. (*See id.* at 824-25, 1122, 1174.) Likewise, the records—and the

19 activities identified therein— pre-date Plaintiff's reported worsening osteoarthritis of the right knee and

20 need for a cane to which Plaintiff testified. There is no evidence the ALJ considered the limited

21 activities identified by Plaintiff at the hearing. (*See id.* at 79.) Thus, the ALJ erred in rejecting her

22 subjective statements based upon her daily activities.

23                   *c.*     *Conservative treatment*

24          When evaluating a claimant's subjective statements, the ALJ may consider "the type, dosage,

25 effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). The treatment

26 a claimant received, especially when conservative, is a legitimate consideration in a credibility finding.

27 *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient

28 to discount a claimant's testimony regarding severity of an impairment"). Importantly, "the fact that

treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)).

Plaintiff contends the ALJ "erred by failing to detail [her] specific treatments" and in characterizing the treatment she received as "essentially routine and/or conservative in nature." (Doc. 20 at 38 *see also* Doc. 12-1 at 81.) Rather, Plaintiff asserts "the evidence of record establishes that [she] underwent aggressive procedures such as surgery," "Lidocaine and Depo Medrol injections into her right shoulder," "Kenalog (e.g., steroid) injections to her right knee," and was "prescribed opioid medication including Norco for both her knee and right shoulder pain." (Doc. 20 at 38-39, citing AR 481-482, 755, 809, 819-820, 1009, 1011, 1020, 1072, 1077, 1082, 1087, 1115, 1161 [Doc. 12-1 at 486-487, 760, 814, 824-825, 1014, 1016, 1025, 1077, 1082, 1087, 1093, 1120, 1166].)

Notably, as Plaintiff argues, the surgical procedure she received for her shoulder is not properly characterized as conservative treatment. *See Ritchotte v. Astrue*, 281 Fed. Appx. 757, 759 (9th Cir. 2008) (rejecting the ALJ's conclusion that the claimant's treatment was conservative where he had surgery); *see also Barrino v. Berryhill*, 2017 WL 977670, at *9 (E.D. Cal. Mar. 14, 2017) ("[s]urgery is not conservative treatment"); *Sanchez v. Colvin*, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013) ("surgery and conservative measures are at different ends of the treatment spectrum"); *Huerta v. Berryhill*, 2019 WL 2009112, at *4 (C.D. Cal. May 7, 2019) ("rotator cuff surgery obviously undermines the ALJ's dismissal of [the claimant's] right shoulder impairment based on conservative treatment"). Thus, the ALJ erred in classifying Plaintiff's rotator cuff surgery as conservative and rejecting her subjective complaints on this basis.

Further, courts have questioned whether injections, such as those Plaintiff received for her shoulder and knee pain, are conservative treatment. See*, e.g., Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Oldham v. Astrue*, 2010 WL 2850770, at *9 (C.D. Cal. 2010) (noting that injections are "performed in operation-like settings" and finding they are not a form of conservative treatment); *Tagle v. Astrue*, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While

13

physical therapy and pain medication are conservative, epidural and trigger point injections are not");
*Duarte v. Saul*, 2020 WL 5257597 at *9 (E.D. Cal. Sept. 3, 2020) ("injections, by themselves, do not constitute conservative treatment").  Consequently, the treatment Plaintiff received does not support the decision to reject her testimony concerning the severity of her symptoms.

### d.    Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine . . . credibility."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider").

Importantly, if an ALJ cites the medical evidence to support an adverse credibility determination, it is not sufficient for the ALJ to simply state the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints."  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The Ninth Circuit explained that "summariz[ing] the medical evidence supporting [the] RFC determination ... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited."  *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility."  *Argueta v. Colvin*, 2016 WL 4138577 at *13 (E.D. Cal. Aug. 3, 2016).  For example, in *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and

convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

Again, in *Holcomb v. Saul,* the Ninth Circuit determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking the testimony and medical evidence. *Id.*, 832 Fed. App'x. 505, 506 (9th Cir. Dec. 28, 2020). The Court noted the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The Court observed that "the ALJ discussed relevant medical evidence but failed to Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Further, the Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, here, the ALJ offered little more than a summary of portions of the medical evidence to support the rejection of Plaintiff's subjective statements. The ALJ did not link objective findings in the treatment notes or the x-rays to Plaintiff's testimony. For example, the ALJ did not identify any evidence that he believed was inconsistent with Plaintiff's testimony that she required the use of a cane and stand for only thirty minutes at one time. Similarly, the ALJ did not identify any evidence that contradicted her statements concerning numbness in her hand or difficulty using her right hand for more than short periods of time. Therefore, the ALJ's summary of the medical record does not support the decision to reject Plaintiff's subjective statements. *See Brown-Hunter*, 806 F.3d at 494; *Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where "the ALJ simply cite[d] to medical evidence and the general adequacy of Plaintiff's functioning, without any link

to how they conflict with, or undermine, Plaintiff's statements").

### e.     Failure to identify the testimony being rejected

The ALJ must identify the portions of the claimant's testimony that is not credible.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings" regarding credibility, such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted).  The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (the ALJ must "specifically identify[] what testimony is not credible and what evidence undermines the claimant's complaints").  Because the ALJ did not carry this burden to identify specific statements rejected or the evidence undermining the limitations to which Plaintiff testified, the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

## C.     Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester*, 81 F.3d at 830.  In general, the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it.  *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d

at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence."  *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff contends the ALJ failed to identify legally sufficient reasons to reject limitations identified by her treating physician, Dr. Norman.  (Doc. 20 at 30-33.)  In addition, Plaintiff asserts the ALJ erred in rejecting the opinion of Dr. Bartell following her consultative examination.  (*Id.* at 26.).  Because the opinions were contradicted by state agency medical consultants – who opined Plaintiff could perform "the full range of medium work" (*see* Doc. 12-1 at 80)— the ALJ was required to identify specific and legitimate reasons for rejecting the opinion of Drs. Bartell and Norman.  *See Lester*, 81 F.3d at 831.

### 1.      Opinion of Dr. Norman

Dr. Michael Norman completed a physical medical source statement on August 27, 2018.  (Doc. 12-1 at 789-792.)  Dr. Norman indicated that he had treated Plaintiff for a year and saw her monthly.  (*Id.* at 789.)  According to Dr. Norman, Plaintiff suffered from pain in her right knee, shoulder, obesity, and depression.  (*Id.*)  He noted Plaintiff was diagnosed with a rotator cuff injury and right knee osteoarthritis.  (*Id.*)  Dr. Norman indicated Plaintiff exhibited tenderness in her right knee, but had negative straight leg raise tests in the sitting and supine positions.  (*Id.*)

Dr. Norman opined Plaintiff could stand for 20 minutes at one time; walk one city block without needing to rest; stand or walk for about two hours total in an eight-hour day; and sit for more than two hours at a time, and at least six hours in an eight-hour day.  (Doc. 12-1 at 790.)  He believed Plaintiff could lift and carry 10 pounds occasionally, twenty pounds rarely, and never 50 pounds.  (*Id.* at 791.)  Dr. Norman indicated Plaintiff could rarely twist and should never stoop, crouch, squat, and climb.  (*Id.*)  He believed Plaintiff did not have manipulative limitations with reaching, handling or fingering.  (*Id.*)  Further, Dr. Norman opined Plaintiff could tolerate moderate stress, reduced due to "moderate depression."  (*Id.*)

17

### a.   *ALJ's analysis*

Addressing the medical evidence, the ALJ indicated: "Dr. Norman completed a medical opinion… wherein he opined that the claimant could sit for at least six hours; and stand and walk for about two hours in an eight-hour workday." (Doc. 12-1 at 80, citing Exh. 7F/2 [Doc. 12-1 at 790].) The ALJ noted that "Dr. Norman opined that the claimant could lift up to 20 pounds occasionally– yet with the inability to stoop in a competitive work environment." (*Id.*) The ALJ stated: "I give this opinion partial weight, yet I note that Dr. Norman's postural and exertional limitations are greater than what the medical record supports, including the claimant's ability to bike or walk, two miles per day, seven days per week." (*Id.*, citing Exh. 4F/10, 78 [Doc. 12-1 at 578, 646], emphasis omitted.)

Plaintiff argues that "[t]he ALJ committed harmful error" by failing to identify specific and legitimate reasons to reject limitations identified by Dr. Norman. (Doc. 20 at 30-33.) She asserts the ALJ took "notations from two medical records out of context and offer[ed] vague and conclusory assumptions about [Plaintiff's] functionality." (*Id.*, emphasis omitted.)

### b.   *Level of activity*

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the subjective complaints and limitations identified by the doctor conflicted with the claimant's daily activities).

As discussed above, the activities cited by the ALJ pre-date Plaintiff's complete right rotator cuff tear, the arthroscopic surgery, and the later diagnosis of rotator cuff impingement syndrome in May 2017. (*See* Doc. 12-1at 824-25, 1122, 1174.) The cited exercises also pre-date Plaintiff's osteoarthritis in her right knee, which Dr. Norman referred to in his residual functional capacity assessment. (*See id.* at 789.) An ALJ may not selectively review the evidence and rely upon only favorable entries to support his decision. *Holohan v. Massanari*, 246 F.3d 1195, 1204-05 (9th Cir. 2001); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "pick and choose ... using portions of evidence favorable to his position while ignoring other evidence"). Thus,

the ALJ erred in rejecting the limitations identified by Dr. Norman based upon Plaintiff's prior level of activity.

> c.     *Inconsistencies with the medical record*

An ALJ may reject the opinions of a physician when they are inconsistent with the overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). To reject an opinion as inconsistent with treatment notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  The ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."  *Embrey*, 849 F.2d at 421-22.

The ALJ failed to carry this burden here, because the ALJ merely stated his conclusion that the limitations identified by Dr. Norman were "greater than what the medical record supports."  The ALJ did not acknowledge—let alone discuss— the opinion of Dr. Norman that Plaintiff could stand for 20 minutes at one time and walk only one city block without needing to rest.  (*See* Doc. 12-1 at 80.) The ALJ also did not address the opinion that Plaintiff could never crouch, squat, and climb.  (*See id.*) Because the ALJ did not set out a thorough summary of the limitations identified by Dr. Norman and failed to specific objective findings in the record that conflicted with the limitations, the medical record does not support the decision to give partial weight to the opinion of Dr. Norman. *See Jones v. Saul*, 2019 WL 4747702, at *4 (E.D. Cal. Sept. 30, 2019) (finding the ALJ erred when he "merely offered his conclusion" that physician's opinion was inconsistent with other evidence and failed to either identify specific objective findings from his summary of the medical record or provide "an explanation of how such evidence undermines [the physician's] opinion").

> 2.     Opinion of Dr. Bartell

Dr. Gary Bartell performed a consultative psychological examination on January 24, 2016.

19

(Doc. 12-1 at 378.)  Dr. Bartell noted Plaintiff's chief complaints included "[d]epression, irritability, [and] chronic pain."  (*Id.*)  Plaintiff reported a history of renal cancer and felt she was "not ready to return to work."  (*Id.*)  Plaintiff told Dr. Bartell that she cried because she fought with her family, felt like she was "just losing it," and described feeling worthless.  (*Id.* at 378-379.)  She reported she was "going to counseling for help."  (*Id.* at 378.)  Dr. Bartlett also noted: "She denies inpatient psychiatric treatment.  She states that she is planning to start seeing a counsel[or] soon."  (*Id.* at 379.)

Dr. Bartell observed Plaintiff "was focused and answered questions in a relevant manner without any redirection."  (Doc. 12-1 at 379.)  He noted Plaintiff "was cooperative but easily tearful throughout the interview with good eye contact."  (*Id.* at 380.)  He found Plaintiff's thinking was "logical and goal directed with emotional emphasis with her logic."  (*Id.*)  Dr. Bartell noted Plaintiff "was crying, distressed, and labile throughout the interview."  (*Id.*)

Evaluating Plaintiff's intellectual functioning and sensorium, Dr. Bartlett noted Plaintiff "knew it was January 2016, but thought it was Wednesday when it was Thursday," and she did not know the date.  (Doc. 12-1 at 380.)  In addition, Dr. Bartlett found Plaintiff could remember five numbers forward, but "none in reverse" and "recalled 1/3 objects after five minutes."  (*Id.*)  In testing Plaintiff's concentration, Dr. Bartlett noted Plaintiff "could spell WORLD forward but not backward."  (*Id.*)  She was unable to interpret the phrases "[d]on't cry over spilt milk" or "[t]ime is golden."  (*Id.*)  In addition, in evaluating Plaintiff's fund of knowledge, Dr. Bartlett found Plaintiff knew the identity of the President of the United States, but she could not name the governor of California or the president of Russia.  (*Id.*)

Dr. Bartlett diagnosed Plaintiff with "Major depressive disorder, severe."  (Doc. 12-1 at 380.)  He opined Plaintiff had "a history of increasing depression following [her] diagnosis of cancer with surgery and developing limitations in her functioning and chronic pain."  (*Id.* at 381.)  He believed Plaintiff "was profoundly depressed and labile during the interview."  (*Id.*)  Dr. Bartlett noted Plaintiff "stated she will be getting into more active counseling and hopefully further consultation with psychiatry to look at her medications."  (*Id.*)  According to Dr. Bartlett, it was "unlikely" Plaintiff could "resume her ability to function in a work setting withing the next year in view of the combination of her physical issues and her severe depression."  (*Id.*)

Dr. Bartlett opined Plaintiff's "ability to perform simple and repetitive tasks is moderately impaired by her depression." (Doc. 12-1 at 381.) He determined that due to depression, Plaintiff had a "markedly impaired" "ability to perform detailed and complex tasks," "accept instructions from supervisors," "deal with stresses in the workplace," and "complete a normal work/day workweek without interruptions." (*Id.*) Dr. Bartlett found Plaintiff's "ability to interact with coworkers and the public is markedly impaired by her withdrawal and depression and problems concentrating." (*Id.*) Further, he believed Plaintiff's "ability to maintain regular attendance in the workplace is moderately impaired by her depression and low energy." (*Id.*)

### a.    ALJ's analysis

The ALJ indicated he gave "this opinion little weight." (Doc. 12-1 at 80.) The ALJ explained his reasoning as follows: "Dr. Bartell's opinion is unsupported by the medical records which reveals no psychiatric treatment until October 2018. Specifically, at the time of the consultative examination the claimant stated that '…she is planning to start seeing counseling soon.'" (*Id.*, citing Exh. 1F/2 [Doc. 12-1 at 379].)

### b.    Analysis

Plaintiff argues the ALJ erred "by failing to give the requisite 'specific and legitimate' reasons for rejecting the only examining psychological CE, Dr. Bartell's [opinion]." (Doc. 20 at 26.) Plaintiff contends the record shows mental health treatment prior to October 2018, which was ignored by the ALJ. (*Id.* at 27.) On the other hand, the Commissioner argues that "[t]he ALJ appropriately gave this opinion little weight as Dr. Bartell's opinion was unsupported by the medical records, which revealed no psychiatric treatment until October 2018." (Doc. 22 at 9, citing AR 75 [Doc. 12-1 at 80].)

Importantly, as Plaintiff observes, the record before the ALJ clearly indicated that Plaintiff had mental health treatment prior to October 2018. Plaintiff was referred to Camarena Behavioral Health by her medical provider and had an initial assessment in May 2017. (Doc. 12-1 at 1113.) Plaintiff was diagnosed with "Anxiety state-unspecified" and "Major depressive disorder – recurrent episode – moderate." (*Id.* at 1116.) In addition, Plaintiff received a prescription for Venlafaxine (Effexor) during 2017. (*Id.* at 1079.) By February 2018, Plaintiff's primary care physician, Dr. Norman, changed the prescription to Zoloft and Amitriptyline to treat Plaintiff's "Depression, chronic." (*Id.* at 1061-62.)

The following month, Dr. Norman discontinued the prescription for Zoloft and started Plaintiff on Paxil.  (*Id.* at 1060.)  In May 2018, Dr. Norman opined Plaintiff appeared "anxious [and agitated]," and increased the prescription of Paxil.  (*Id.* at 1042-43.)

The records from Camarena Health demonstrate that Plaintiff received treatment for mental health from Dr. Norman prior to October 2018, which included not only counseling but also prescription medication, which underwent several changes prior to that date.  Because the ALJ failed to acknowledge evidence of Plaintiff's mental health treatment, the mischaracterization of the medical record cannot support the decision to reject the limitations identified by Dr. Bartell.

### 3.    Conclusion

The ALJ failed to carry the burden to identify specific and legitimate reasons, supported by the record, to reject the mental limitations identified by Drs. Norman and Bartell.  Consequently, the ALJ erred in evaluating the record and opinions related to Plaintiff's mental and physical limitations.

### D.    Step Two of the Sequential Evaluation

The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, (1987)).  The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*, 482 U.S. at 153.  At step two, a claimant has the burden to make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id.*; *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("The burden of proof is on the claimant at steps one through four...").

An impairment, or combination thereof, is "not severe" if the evidence establishes the impairment has "no more than a minimal effect on an individual's ability to do work."  *Smolen*, 80 F.3d at 1290.  For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  *Id.*, §§ 404.1522(b), 416.922(b).  These activities include

22

"[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id.*

The "Paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 are used to evaluate the severity of mental impairments of a claimant and include the ability to: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *See id.*, §12.00(A)(2)(b) (2018). The Regulations inform claimants: "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

### 1.     The ALJ's findings

The ALJ determined Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Doc. 12-1 at 77.)  In making this finding, the ALJ indicated he considered the Paragraph B criteria and stated:

> The first functional area is understanding, remembering, or applying information.  In this area, the claimant has a mild limitation.  The next functional area is interacting with others.  In this area, the claimant has no limitation.  The third functional area is concentrating, persisting, or maintaining pace.  In this area, the claimant has a mild limitation.  The fourth functional area is adapting or managing oneself.  In this area, the claimant has no limitation.
>
> Here, the records at Camarena Health Center reveal the claimant's denial of anxiety, mental problems, depression or concentration difficulties, in 2016. (Exhibit 4F/44). Furthermore, mental status examinations revealed normal mood and affect, normal attention span and concentration (Exhibit 4F/41).  Further, a PHQ-2 test, dated January 2016, revealed "minimal" symptoms (Exhibit 4F/18, 22).  However, in consideration of the claimant's one record of psychiatric treatment in October of 2018, at Madera Behavioral Health, I make the above "paragraph B" findings.

(Doc. 12-1 at 77, citing *id.* at 586, 590, 609, 612.)

Plaintiff asserts this analysis was flawed because "the record contains considerably more objective evidence with respect to the severity and limitations regarding [Plaintiff's] medically determinable impairment (MDI) of Major Depressive Disorder than the ALJ addressed above in "Exhibit 4F" leading up to October 2018 from Camarena Health." (Doc. 20 at 25.)

2.      Failure to consider probative evidence

The Ninth Circuit determined that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations omitted).  Rather, the ALJ must explain only "why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (the ALJ "may not reject significant probative evidence without explanation").

In evaluating the severity of Plaintiff's depression, the ALJ failed to address findings made during the examination by Dr. Bartlett.  For example, the ALJ did not address the testing related to Plaintiff's concentration, her ability to remember a series of numbers forward but not in reverse, the inability to interpret simple proverbs, or Plaintiff recalling only "1/3 objects after five minutes."  (*See* Doc. 12-1 at 77, 380.)  The ALJ also omitted observations from Dr. Bartlett regarding Plaintiff's mood, personality, and attitude—such as Plaintiff "was crying, distressed, and labile throughout the interview"—in evaluating her impairment at Step Two.  (*Id.*)  Such findings and observations are probative evidence that may not be ignored without comment.  *See* 20 C.F.R. § 404.1527(a)(2); *see also, e.g., St. Clair v. Colvin*, 2014 WL 5421261 at *6, 208 Soc. Sec. Rep. Service 593 (W. Wash. Oct. 23, 2014) (finding the ALJ erred by failing to address "independent observations," "such as that plaintiff appeared unkempt, expressionless, and hostile" because they were "significant, probative observations that the ALJ should have discussed").  Thus, the ALJ erred in ignoring the findings from Dr. Murphy's consultative examination at Step Two of the evaluation.

Furthermore, as discussed above, the ALJ failed to discuss the evidence of Plaintiff's mental health treatment before October 2018.  Notably, "it is well established that primary care physicians (those in family or general practice) identify and treat the majority of Americans' psychiatric disorders."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Thus, though Dr. Norman was not a psychiatrist, the treatment he provided Plaintiff for depression in 2017 and 2018 was relevant to the ALJ's review of the record and could not be ignored without comment.

3.      Conclusion

An ALJ may not selectively review the evidence to support a decision.  *Holohan v. Massanari*,

246 F.3d 1195, 1204-05 (9th Cir. 2001); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ may not "pick and choose ... using portions of evidence favorable to [her] position while ignoring other evidence").  Because the ALJ ignored significant, probative evidence related to Plaintiff's mental health treatment and objective findings on examination, the ALJ erred in evaluating the record related to the severity of her depression.

**E.     Plaintiff's Residual Functional Capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions. *See, Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  The ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when defining a claimant's RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Plaintiff contends the RFC identified by the ALJ "is not supported by substantial evidence." (Doc. 19 at 33, emphasis omitted.)  As discussed above, the ALJ erred in his analysis of the evidence related to Plaintiff's mental and physical impairments, including Plaintiff's testimony and medical opinions in the record, which impacted the determination of the RFC.  *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain..."). Therefore, the Court is unable to find the RFC determination was proper.

**F.     The VE's Testimony**

Assuming the ALJ had not erred in his evaluation of the record and determination of the RFC, Plaintiff asserts the ALJ also erred at step five by "failing to identify and resolve a conflict" between the *Dictionary of Occupational Titles* and the testimony of the vocational expert.  (Doc. 20 at 39.)

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" that Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v.*

1  *Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five).  To make this

2  determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles*

3  ("DOT"), which classifies jobs by their exertional and skill requirements, and is published by the

4  United States Department of Labor, Employment & Training Administration.  *Terry v. Sullivan*, 903

5  F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1). In the alternative, the ALJ may call a

6  vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would

7  be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d

8  1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling[2] ("SSR") 00-4p, 2000 WL 1898704 at *2

9  ("In making disability determinations, we rely primarily on the DOT … for information about the

10  requirements of work in the national economy.")

11       The ALJ called upon vocational expert Kathleen McAlpine ("the VE") to "determine the extent

12  to which [Plaintiff's] limitations erode the unskilled light occupational base."  (*See* Doc. 12-1 at 82.)

13  The ALJ asked the VE whether a hypothetical individual—with the same physical and mental

14  limitations identified in the residual functional capacity for Plaintiff, including a restriction from

15  "operat[ing] foot controls with the right lower extremity"—could perform Plaintiff's past relevant work

16  or "other jobs."  (*Id.* at 123-125.)  The VE responded the hypothetical person could work as a grader or

17  sorter, DOT 529.687-186; office helper, DOT 239.567-010; paper folder, DOT 795.687-034; and

18  parking lot attendant 915.473.010.  (*Id.* at 125.)  The ALJ inquired whether the VE's testimony on the

19  hypothetical was "consistent with the DOT," to which the VE responded: "Yes and my experience."

20  (Doc. 12-1 at 125.)

21       1.       Conflict with the *Dictionary of Occupational Titles*

22       Pursuant to SSR 00-4p, occupational evidence provided by a vocational expert "generally

23  should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704

24  at *2. When there is a conflict between the testimony of the vocational expert and *the Dictionary of*

25  *Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying

26

27       [2] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the
Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings

28  deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453,
1457 (9th Cir. 1989).

on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

> 2.     Whether there is a conflict

Plaintiff contends the testimony of the VE conflicts with the job requirements under the *Dictionary of Occupational Titles* for the position of "parking lot attendant," DOT 915.473-010.  (Doc. 20 at 39.)  Plaintiff observes that the *DOT* defines the work as "requiring a person to 'park automobiles for customers in parking lot [or] storage garage.'"  (*Id.* at 40, quoting DOT 915.473-010.)

Under the *Dictionary of Occupational Titles*, the position of "Parking-lot Attendant" may also be titled "Automobile Parker," "Parking Attendant," "Parking-Lot Chauffeur," "Parking-Station Attendant," or "Spotter."  *See* DOT 915.473-010, 1991 WL 687865.  The job description states:

> Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage Attendant (automotive ser.). May direct customers to parking spaces.

*Id.*  In addition, the DOT indicates the position is classified as "light work," and explains a job is classified as such "(1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of

27

materials even though the weight of those materials is negligible." *Id.*  Thus, the *Dictionary of Occupational Titles* indicates a "Parking Lot Attendant" may be required to park vehicles and could also be required to use leg controls.  Thus, it appears there is a conflict between the VE's testimony that Plaintiff could perform the work and the job description provided in the DOT.

### 3.    Whether the record supports the deviation

When there is a conflict between the testimony of a vocational expert and the *Dictionary of Occupational Titles*, the Court may rely upon the testimony only when "the record contains persuasive evidence to support the deviation." *Massachi*, 486 F.3d at 1153.  Importantly, there is no indication in the record that the ALJ was aware of the conflict between Plaintiff's limitations with her right foot and the requirements of the job as defined by the *Dictionary of Occupational Titles*.  As a result, the ALJ was unable to resolve the conflict between the two vocational resources, as is required by the Ninth Circuit. *See Johnson*, 60 F.3d at 1435; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("in order for the ALJ to rely on a job description in the *Dictionary of Occupational Titles* that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation").  Because the ALJ did not address the apparent conflict, the record cannot support the deviation.

## G.    Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  The Ninth Circuit also explained

that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony may be credited as true, and remand is not appropriate. *Lester,* 81 F.3d at 834*; Smolen,* 80 F.3d at 1292.

The ALJ failed to identify legally sufficient reasons for rejecting limitations identified by Plaintiff's treating physician and an examining physician.  These limitations are related to the determination of Plaintiff's mental residual functional capacity, and the ultimate determination of whether Plaintiff is able to perform work in the national economy.  Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence and identify legally sufficient grounds to support the decision. *See Moisa*, 367 F.3d at 886.  In addition, a remand is also appropriate for the ALJ to provide sufficient findings concerning Plaintiff's subjective complaints and the limitations Plaintiff identified in her testimony.  *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony).

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the record, and the ALJ's decision cannot be upheld.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. Plaintiff's request for review of the ALJ's decision (Doc. 20) is **GRANTED**;

2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Monica Tabarez Guzman and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **December 22, 2021**                          **/s/ Jennifer L. Thurston**
                                                CHIEF UNITED STATES MAGISTRATE JUDGE